Wardlaw J.
delivered the opinion of the Court.
We have no doubt that it is the fact of sealing which constitutes the essential characteristic of a special*}7, and that, therefore, apposui sigillum, or equivalent words, will not suffice without a seal, (Harp., 3,) and that a seal without any such words may be sufficient, (4 M’Cord, 267.) We have no doubt, that a seal already made may be adopted by a party so as to be his own as effectually as one made by himself, (1 M’Mul., 313); that one seal may, by adoption, become the seal of several without any act of sealing repeated, (4 Term, 313); and that where the intention to make or adopt a seal is shown, any scrawl made or adopted for the purpose will be a seal, (4 M’Cord, 267.
But the difficulty in this case, is, that without any other evidence of intention to make or adopt a seal, the jury have been instructed, that from a belief of the signing only they might find an adoption of the seal. The words, apposui sigillum, “witness my hand and seal,” “signed, sealed and delivered,” or equivalent expressions in an instrument signed by a party, furnish of themselves evidence of his intention to seal, and a very slight act will serve to effect the intention. Where, without such words, the instrument in its general form is a conveyance of land, a penal bond, or other instrument which properly should be sealed, and ordinarily is so, slight evidence aliunde may establish the intention to seal. But where the instrument is one which is familiarly used without a seal, as a promissory note, the evidence of intention should be stronger, in proportion as the fact of sealing is less probable.
The very great difference which out law makes between sealed and unsealed instruments, in the distribution of the assets of insolvent estates, the limitation of actions, and the form of *405 proceedings, and tbe occasional occurrence of instances where persons have yielded to the temptation of committing forgeries, easy to be executed and hard to be detected, to obtain the advantages which are sometimes given to sealed instruments, make it very important that the evidence, upon which the distinction between the two kinds of instruments really rests, should be required. For a seal, the letters L. S., with a circumflex, are usually adopted; and where a party who signs does himself make these marks plainly after his name, or writes his name before them plainly made on the paper, they furnish of themselves, even without the append sigillum, evidence of his intention to do what they usually denote—to seal. The same might be said of the L. S. plainly written without the circumflex, and perhaps also of these letters, so familiarly understood to stand for a seal, even where hastily and not plainly written. Any other letters, or illegible attempts to make letters, might do if the intention to seal should be apparent from words expressed in the instrument, or from clear evidence aliunde. In like manner, if the intention to make a seal be plain, the circumflex alone might serve, and so might a square, or other figure enclosing a blank space, or a cross. And why not two straight lines, or one line, long or short, or a blot or the mark of a period? Upon what a trifling matter then would depend most important consequences, if any thing, which, with evidence of intention might serve, should wflthout any such evidence be taken for a seal! How great would be the danger, that sometimes a little mark, in which none of the peculiarities of hand-writing could be observed, would unexpectedly be found opposite to a signature, or that some character known to be in the hand-writing of the signer, but made perhaps through accident, or for some other purpose, could be adduced as his seal.
In the case which is before us, no unfairness in the payee of the paper has been imputed in argument; and from an inspection of the paper in question, we find no reason to suspect any. To us it seems, (as we think the jury may well have believed,) that the letters L. S. plainly written, were either made by the person who wrote the note before the signature *406 of Dantzler was written, or were made when that signature was written. We take it to be established that Dantzler signed and sealed, and that afterwards Daniel O’Cain signed beneath the name of Dantzler. but not so as to place his name opposite to the seal which had been made or adopted by Dantz-ler. The whole question is, whether from this only the seal of Daniel O’Cain may be inferred.
If the usual words, witness our hands and seals, had been on the paper, we should not have doubted. It is contended, that on the face of the paper itself, Daniel O'Cain’s intention to seal is manifest; for that the words, “we or either of us,” show his intention to make a contract joint as well as several, and it cannot be a joint contract unless he sealed, inasmuch as otherwise no action would lie jointly against him and Dantzler, who did seal. This is an indication of intention, if Daniel O’Cain understood and adverted to the law upon which it depends.
On the other hand, the note is in all respects, except the seal of Dantzler, a common promissory note, and especially is payable to Daniel O’Cain, “or bearer.” If sealed, it could not be payable to bearer, and therefore it is argued, an intention not to seal may be deduced. The two inferences seem about equal. The probability is, that the parties all understood less of law than persons who deal with such anomalous instruments as notes under seal, should understand; and that in truth, as to Daniel O’Cain’s intention, in his ignorance of the impossibility of joining either in assumpsit or debt two defendants, of whom one has sealed, and the other has not, nothing can be deduced from his willingness to enter into a joint contract; as in like manner, in his ignorance of the unnegoti-ability of single bills by delivery, nothing can be deduced from the use of a word of negotiability. If he did not seal, his intention to make a joint contract will be frustrated; as if he did, his promise to pay to bearer will be nugatory.
Nothing then being cm the face of the paper sufficiently indicative of the intention to seal, there must be some evidence of it aliunde. It is just as essential for the plaintiff to establish to the satisfaction of the jury the fact of sealing, as the fact *407 of signing. Sealing may be inferred from sufficient circumstances, as delivery will be inferred from the possession of an instrument by a party in whose favor it was made. But from signing only, sealing cannot be inferred. The jury having attained a belief of the signing, should, under suitable instructions, have been satisfied that Daniel O’Cain when he signed, did intend to adopt, and did actually adopt, a seal then existing on the paper, before they rendered a verdict for the plaintiff.
A new trial is ordered.